BOYCE F. MARTIN, Jr., Circuit Judge.
 

 In 1978, Congress passed the Bankruptcy Reform Act, which “sought to separate the administrative duties in bankruptcy from the judicial tasks, leaving the bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination.” H.R.Rep. No. 764, 99th Cong., 2d Sess. 18 (1986),
 
 reprinted in
 
 1986 U.S.C.C.A.N. 5227, 5230. As part of this process, Congress created the U.S. Trustee Pilot Program within the Department of Justice to “aid in the administration of bankruptcy cases, a task which the courts had previously performed.”
 
 In re Revco D.S., Inc.,
 
 898 F.2d 498, 500 (6th Cir.1990). By 1986, a permanent nationwide program was in place. Under that program, the United States Attorney General appoints a U.S. Trustee in each of twenty-one regions across the country. 28 U.S.C. § 581(a). Each U.S. Trustee is, in turn, responsible for establishing, maintaining, and supervising a panel of private trustees who are eligible and available to serve as trustees in cases filed under Chapter 7 of the Bankruptcy Code. 28 U.S.C. § 586(a)(1).
 

 Philip R. Joelson, the plaintiff in this case, served as a member of the Panel of Chapter 7 Bankruptcy Trustees for the Northern District of Ohio for many years. Joelson began serving as a Chapter 7 Trustee in July of 1966, and served continuously in that position until his reappointment in September of 1979 by the Administrative Office of the U.S. Courts. After the U.S. Trustee Program was certified in the Northern District of Ohio on April 5, 1988, the U.S. Trustee for the Districts of Ohio and Michigan (Region 9) appointed Joelson to the region’s Chapter 7 Trustee Panel effective May 4, 1988. In a notice of provisional appointment which preceded final approval of Joelson’s appointment, the U.S. Trustee informed Joelson that his appointment was subject to discretionary
 
 *1416
 
 termination “at any time for reasons associated with [his] application or background check, or for unsatisfactory performance.” Joelson served as a member of the panel until March 12, 1992, the date on which he apparently was removed from active case rotation.
 

 Joelson viewed his removal from active case rotation as arbitrary, and asked the U.S. Trustee to resume appointing him as an interim trustee in newly-filed Chapter 7 cases. The Acting U.S. Trustee met with Joelson on September 2, 1993 to discuss his status, and subsequently declined to reverse the prior decision removing Joelson from active case rotation. The U.S. Trustee advised Joelson of his decision in a letter dated November 16, 1993, which stated:
 

 I have received your letter of October 27, 1993 requesting that you be placed back on the draw of newly assigned Chapter 7 bankruptcy cases. I have considered this request in conjunction with your other correspondence, my personal meeting with you on September 2, 1993, and detailed discussion with the Cleveland U.S. Trustee staff.
 

 Upon review of your prior case administration, adherence to procedures, and interaction with creditors, debtors, and our office, there continue[] to be numerous concerns. As a result, I am unable to return you to the active case rotation.
 

 On February 25, 1994, Joelson filed a
 
 pro se
 
 complaint in district court, challenging the U.S. Trustee’s decision on statutory and constitutional grounds. Joelson’s complaint named the United States of America, the Attorney General of the United States, the Acting Director of the Executive Office for the U.S. Trustees, the Acting U.S. Trustee for Region 9, and the Assistant U.S. Trustee for Cleveland as defendants. In his complaint, Joelson asserted that the defendants: (1) violated Administrative Procedure Act, 5 U.S.C. §§ 551,
 
 et seq.,
 
 due process provisions; (2) violated his Fifth Amendment due process rights; and (3) tortiously interfered with his constitutional and statutory rights. Joelson also claimed that the U.S. Trustee Program is unconstitutional in that it violates the separation of powers doctrine and the Uniformity Clause, U.S. Const., art. I, § 8, cl. 4. Joelson sought declaratory and injunctive relief, as well as damages, attorney’s fees, and costs from the defendants.
 

 After Joelson’s complaint was filed, the defendants moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (6). In doing so, the defendants claimed that: (1) the district court lacked jurisdiction to hear Joel-son’s claim under the Administrative Procedure Act because the decision to remove a panel trustee is committed to agency discretion by law; (2) Joelson failed to state a valid constitutional claim; (3) Joelson’s exclusive remedy for a common law tort is an action against the United States; (4) the district court lacked personal jurisdiction over the individual defendants; (5) the defendants are entitled to qualified immunity; and (6) the U.S. Trustee Program is constitutional.
 

 On February 13, 1995, the district court dismissed Joelson’s complaint pursuant to Rules 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. This timely appeal followed.
 

 I.
 

 We review a district court’s decision to grant a motion to dismiss for lack of subject matter jurisdiction
 
 de novo. Madison-Hughes v. Shalala,
 
 80 F.3d 1121, 1123 (6th Cir.1996). We also review a district court’s dismissal of claims pursuant to Rule 12(b)(6)
 
 de novo,
 
 construing the complaint “in the light most favorable to the plaintiff, accepting] all factual allegations as true, and determining] whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.”
 
 In re DeLorean Motor Co.,
 
 991 F.2d 1236, 1239-40 (6th Cir.1993) (stating also that “a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory”). Applying these standards, we turn to a review of Joelson’s claims.
 

 II.
 

 Counts I and II of Joelson’s complaint alleged that the U.S. Trustee’s decision
 
 *1417
 
 to remove him from active ease rotation violated the due process requirements of the Administrative Procedure Act. Specifically, Joelson claimed that his panel membership constituted a “license” under Section 551(8) of the Act, and that the defendants deprived him of that license without notice and an opportunity to cure any deficient conduct in violation of Sections 558(c)(1) and (2). The district court dismissed Joelson’s Administrative Procedure Act claims for lack of subject matter jurisdiction on the ground that the U.S. Trustee’s decision to remove Joelson from active case rotation was not subject to judicial review, and we agree with that conclusion. The court held that under Section 701(a)(2) of the Act, it did not have jurisdiction over the case because the governing statute and regulations provide “no judicial standard against which to evaluate a U.S. Trustee’s exercise of discretion regarding membership in the Panel of Trustees,” and because a decision regarding the removal of a trustee from the panel “requires the determination of factors ... within the unique expertise of the U.S. Trustee.” Joelson challenges this determination on appeal, arguing that the U.S. Trustee’s decision to remove him from active case rotation is subject to judicial review.
 

 The judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706, provide for judicial review for any person “suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.” 5 U.S.C. § 702. Under the Act, there is a “general presumption that all agency decisions are reviewable ... at least to assess whether the actions were ‘arbitrary, capricious, or an abuse of discretion.’ ”
 
 Heckler v. Chaney,
 
 470 U.S. 821, 826, 105 S.Ct. 1649, 1653, 84 L.Ed.2d 714 (1985);
 
 Abbott Labs. v. Gardner,
 
 387 U.S. 136, 140-41, 87 S.Ct. 1507, 1511-12, 18 L.Ed.2d 681 (1967) (stating that the “Administrative Procedure Act’s ‘generous review provisions’ must be given a ‘hospitable’ interpretation”);
 
 Citizens to Preserve Overton Park, Inc. v. Volpe,
 
 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (reasoning that nonre-viewability of agency action is the exception rather than the rule). The presumption favoring judicial review is overcome in only two instances: (1) where a statute precludes judicial review, and (2) where agency action is “committed to agency discretion by law.” 5 U.S.C. §§ 701(a)(1) and (2). Both exceptions to judicial review of agency actions are to be narrowly construed, and courts should restrict access to judicial review “only upon a showing of ‘clear and .convincing evidence’ of a contrary legislative intent.”
 
 Abbott Labs.,
 
 387 U.S. at 141, 87 S.Ct. at 1512.
 

 The parties to this case do not dispute that the U.S. Trustee’s Office is an agency within the definition of the Administrative Procedure Act or that Joelson’s removal from active case rotation constituted final agency action as defined by the Act. We must therefore only decide whether Joelson is able to “clear the hurdle of [Section] 701(a),” to be entitled to judicial review of the agency action at issue.
 
 Chaney,
 
 470 U.S. at 828, 105 S.Ct. at 1654 (stating that, “as long as the action is a ‘final agency action for which there is no other adequate remedy in a court,’ ” judicial review is available if a party overcomes the exceptions provided for in Section 701(a)).
 

 Title 28 U.S.C. §§ 581,
 
 et seq.,
 
 the statutory scheme governing the U.S. Trustees Program, contains no express indication that “Congress sought to prohibit judicial review and there is most certainly no ‘showing of “clear and convincing evidence” of a ... legislative intent’ to restrict access to judicial review,” so Section 701(a)(1) does not prevent judicial review of Joelson’s claims under the Administrative Procedure Act.
 
 Chaney,
 
 470 U.S. at 830, 105 S.Ct. at 1655 (citing
 
 Abbott Labs.,
 
 387 U.S. at 141, 87 S.Ct. at 1512). The dispositive issue, therefore, is whether the relevant statutory scheme and regulations promulgated pursuant to it, provide meaningful standards by which to review a U.S. Trustee’s removal of a panel member from active case rotation, or whether such action is committed to agency discretion by law and is therefore immune from judicial review under Section 701(a)(2).
 

 Section 701(a)(2) applies “even where Congress has not affirmatively precluded re
 
 *1418
 
 view,” and provides that judicial review is unavailable when a statute
 

 is drawn so that a court would have no meaningful standard against which to judge [an] agency’s exercise of discretion. In such a case, the statute (“law”) can be taken to have “committed” the decision-making to the agency’s judgment absolutely .... if no judicially manageable standards are available for judging how and when an agency .should exercise its discretion, then it is impossible to evaluate agency action for “abuse of discretion.”
 

 Chaney,
 
 470 U.S. at 830, 105 S.Ct. at 1655. Judicial review is available only where there are
 

 standards, definitions, or other grants of power [that] deny or require action in given situations.... A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency’s discretion. ... If regulations do not provide guidance about specific legal standards for judicial review, agency action is immune from such review.
 

 Madison-Hughes,
 
 80 F.3d at 1127 (citations omitted). “Such a determination is statute specific ... and relates to the language of the statute and whether the general purposes of the statute would be endangered by judicial review.”
 
 County of Esmeralda v. U.S. Dep’t of Energy,
 
 925 F.2d 1216, 1218 (9th Cir.1991) (citations omitted). The fact that an agency action involves some discretion does not necessarily make it unreviewable. Rather,
 

 the question is whether the Secretary ... enjoys absolute discretion — whether such a decision is totally committed to the judgment of the agency because of the practical requirements of the task to be performed, absence of available standards against which to measure the administrative action, or even the fact that no useful purpose could be served by judicial review.
 

 Cappadora v. Celebrezze,
 
 356 F.2d 1, 5-6 (2d Cir.1966).
 

 In determining whether a meaningful standard of review exists which would allow judicial review of the agency action in this case, we must examine the text and structure of the relevant statute, as well as regulations promulgated thereunder, to determine whether Congress has “provided us with law to apply.”
 
 Chaney,
 
 470 U.S. at 834, 105 S.Ct. at 1657. Title 28 U.S.C. § 586 provides in relevant part that:
 

 (a) Each United States trustee, within the region for which such United States trustee is appointed, shall—
 

 (1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;
 

 ******
 

 (3) supervise the administration of cases and trustees in cases under chapter 7, 11, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate—
 

 * * * * * *
 

 (D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;
 

 * * * * * *
 

 (G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress;
 

 * * * * * *
 

 (5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe....
 

 Regulations promulgated pursuant to the statute authorize each U.S. Trustee to establish a panel of private trustees and, with the approval of the Director of the Executive Office for U.S. Trustees, to “increase or decrease the total membership of the panel.” 28 C.F.R. §§ 58.1(a) and (b). The U.S. Trustees may rotate panel membership to establish diversity on the panel. 28 C.F.R. § 58.1(b). Individuals appointed to Chapter
 
 *1419
 
 7 panels by U.S. Trustees must meet certain minimal eligibility requirements. 28 C.F.R. § 58.3; 11 U.S.C. § 321. In appointing panel members, U.S. Trustees may not discriminate on the basis of race, color, religion, sex, national origin or age. 28 C.F.R. § 58.5.
 

 Once an individual becomes a panel member, he or she has no authority to act as a trustee until appointed to a particular case as an interim trustee by a U.S. Trustee. 11 U.S.C. § 701(a)(1). After a panel member is appointed to a particular case, he or she serves on a provisional basis until a meeting of creditors is held pursuant to 11 U.S.C. § 341. At the meeting, the creditors may elect a trustee, who then replaces the interim trastee. 11 U.S.C. § 702(b). If the creditors do not elect a trustee, the interim trustee serves as the trustee for the case. Once assigned to a bankruptcy case, a trustee may only be removed from that existing case if a bankruptcy court finds cause after notice and a hearing. 11 U.S.C. § 324(a). There is no analogous statutory or regulatory provision, however, governing a U.S. Trustee’s removal of a panel member from general eligibility to serve as a trustee in future cases.
 
 [1]
 

 As these provisions indicate, the relevant statute and regulations promulgated pursuant to it are broadly drawn, and do not establish “meaningful standards, criteria or priorities” for a court to review a U.S. Trustee’s decision to remove a panel member from active case rotation.
 
 See Madison-Hughes,
 
 80 F.3d at 1129 (stating that, “[i]n the absence of specific guidelines by which to judge the sufficiency of [agency action], the courts must defer to the broad discretionary judgment granted to [an agency]”). Legislative history of the Bankruptcy Reform Act of 1978 supports our determination that, in enacting these broad provisions governing the appointment and removal of panel members, Congress intended to delegate decisions as to panel membership to the U.S. Trustees. A House Report states:
 

 The Attorney General will prescribe the qualifications for panel membership, which will be uniform throughout the country. ... However, the actual creation of the panels, the examination of candidates for membership on the panels ... will be done locally by United States trustees. United States trustees will also monitor the performance of panel members ... in order to determine whether they should be continued in or removed from panel membership or office.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 102 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6063.
 

 The governing statute, regulations, and legislative history thus grant the U.S. Trustees broad discretion with regard to the appointment and removal of Chapter 7 panel members. The provisions cited above do not provide express or substantive guidelines upon which a court could base its review of a U.S. Trustee’s decision to remove a Chapter 7 panel member from active case rotation. Decisions regarding the discharge of private panel trustees from future case assignments are instead committed to the discretion of the U.S. Trustees.
 
 See 1 Collier on Bankruptcy
 
 ¶ 6.20[4] (Lawrence P. King ed., 15th ed. 1995) (noting that the removal of a trustee from a panel is different from the removal of a trustee already serving in a case, and stating that “[o]nly the court may remove a trustee who is serving in a case. The United States trustee, however, with the responsibility to establish and maintain panels, has the unfettered power to remove members from the panel”). Thus, the broad standards governing the U.S. Trustees’ ability to appoint and remove panel members “fairly exude[] deference,”
 
 Webster v. Doe,
 
 486 U.S. 592, 600, 108 S.Ct. 2047, 2048, 100 L.Ed.2d 632 (1988), and preclude the district court, under Section 701(a)(2), from reviewing the U.S Trustee’s decision in this case under the Administrative Procedure Act.
 

 III.
 

 In Counts III, IV, and V of his complaint, Joelson alleged that the defendants
 
 *1420
 
 violated his Fifth Amendment due process rights by removing him from the trustee panel without notice and a hearing. Specifically, Joelson alleged that the U.S. Trustee’s decision deprived him of: (1) a liberty interest in his good name, reputation, honor and integrity; (2) a liberty interest in pursuing his chosen profession; and (3) a property interest in his panel membership. The district court dismissed these constitutional claims on the ground that Joelson failed to assert the deprivation of any constitutionally protected interest, and Joelson now appeals the dismissal of those claims.
 

 We note first that our decision that panel membership determinations are committed to the discretion of the U.S. Trustees does not automatically foreclose our review of Joelson’s constitutional claims. Where “Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.... We require this heightened showing in part to avoid the 'serious constitutional question’ that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.’ ”
 
 Webster,
 
 486 U.S. at 603, 108 S.Ct. at 2053 (citations omitted). Colorable constitutional claims arising out of the U.S. Trustee’s actions are therefore reviewable if Joelson is able to prove facts “in support of his claims that would entitle him to relief.”
 
 In re DeLorean,
 
 991 F.2d at 1240.
 

 Under the Fifth Amendment, no person is to be “deprived of life, liberty, or property, without due process of law.” U.S.Const, amend. V. To sustain a procedural due process claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest.
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) (noting that the “range of interests protected by procedural due process is not infinite”). For the following reasons, Joelson is unable to state a valid procedural due process claim, and the district court properly dismissed Counts III, IV and V.
 

 We first address Joelson’s claims that the defendants deprived him of a protected liberty interest in his reputation, good name, hon- or and integrity, and in the pursuit of his chosen profession (i.e., Chapter 7 trustee panel membership) in violation of the Due Process Clause of the Fifth Amendment. Joelson contends that the November 16,1993 letter he received from the U.S. Trustee contained allegations that were personally and professionally detrimental to his good name, reputation, honor, and integrity, and that he was deprived of a protected liberty interest when the defendants failed to give him notice and a hearing prior to issuing the letter and prior to removing him from active case rotation.
 

 A person has a protected liberty interest in his “reputation, good name, honor, and integrity,” as well as in “being free to move about, live, and practice his profession without the burden of an unjustified label of infamy.”
 
 Chilingirian v. Boris,
 
 882 F.2d 200, 205 (6th Cir.1989);
 
 Stretten v. Wadsworth Veterans Hosp.,
 
 537 F.2d 361, 366 (9th Cir.1976) (citing
 
 Roth,
 
 408 U.S. at 572, 92 S.Ct. at 2706). To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession.
 
 Roth,
 
 408 U.S. at 573-74, 92 S.Ct. at 2707-08. A plaintiff must also allege in his or her complaint that the stigmatizing information was publicly disclosed.
 
 Christian v. Belcher,
 
 888 F.2d 410, 416 (6th Cir.1989). Joelson’s allegations are insufficient.
 

 Although Joelson asserts that the U.S. Trustee’s letter contained detrimental allegations, the letter merely stated that the U.S. Trustee was “unable to return [Joel-son] to the active case rotation” as a result of his prior case administration, his failure to adhere to procedures, and his interaction with creditors, debtors, and the U.S. Trustee’s Office. Statements of this nature do not implicate a protected liberty interest. Liberty interests “are not implicated ... by allegations of improper or inadequate performance or, in some cases, by charges of incompetence, neglect of duty or malfeasance. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity
 
 *1421
 
 does not constitute a liberty deprivation.”
 
 Gregory v. Hunt,
 
 24 F.3d 781, 788 (6th Cir.1994) (citing
 
 Chilingirian,
 
 882 F.2d at 205-06 n. 8). In addition, Joelson has failed to plead any facts demonstrating that the defendants made a public statement detrimental to his reputation or that he was so stigmatized by the statements in the U.S. Trustee’s letter that he was foreclosed from obtaining other employment opportunities. While the statements in the U.S. Trustee’s letter may have been unfavorable to Joel-son, he is unable to state a valid claim that the statements deprived him of a protected liberty interest in his reputation, good name, honor, or integrity, or foreclosed future employment opportunities.
 

 Joelson also argues that his membership on the trustee panel constitutes a protected property interest, and that the defendants deprived him of that interest when they failed to give him written notice and a hearing prior to his removal from active case rotation. To have a property interest in a benefit, a person must have a “legitimate claim of entitlement to it,” rather than a mere “abstract need or desire for it,” or a “unilateral expectation of it.”
 
 Roth,
 
 408 U.S. at 577, 92 S.Ct. at 2709. Property interests arise from “existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.”
 
 Id.
 
 No such source gives Joelson a legitimate claim of entitlement to panel membership. There is no statutory promise of continued employment, and appointment to a trustee panel “depends on an affirmative act of discretion by the granting official.”
 
 See Dorfmont v. Brown,
 
 913 F.2d 1399, 1403 (9th Cir.1990),
 
 cert. denied,
 
 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991) (holding that because the granting of a security clearance depends on such an act of discretion, “no one has a ‘right’ to a security clearance”). Appointment to the trustee panel meant only that Joelson was eligible and available to serve as a trustee, and did not grant him an affirmative right to continued membership on the panel.
 

 In a ease similar to the one before us, the Tenth Circuit held that a standing trustee for Chapter 12 and Chapter 13 bankruptcy cases does not have a property interest in continued service.
 
 Richman v. Straley,
 
 48 F.3d 1139 (10th Cir.1995). In
 
 Richman,
 
 Barbara Richman sued the United States and three federal officials, claiming that their appointment of a new standing trustee and assignment of all new cases to that individual constituted a
 
 defacto
 
 removal of Richman as the standing trustee in the District of Utah in violation of her Fifth Amendment due process rights. The Tenth Circuit reasoned that, “to invoke the protections of the Due Process Clause, Ms. Richman must prove that her appointment as a standing trustee created a claim of entitlement to serve as trustee in future cases.”
 
 Richman,
 
 48 F.3d at 1143. The Court disagreed with Rich-man’s argument that the federal statutory scheme governing the appointment and removal of standing trustees established such an entitlement, and held that “standing trustees do not have a property right in the assignment of new cases.”
 
 Id.
 
 The Court stated:
 

 Section 586(b) gives the United States Trustee the power to appoint standing trustees subject to approval of the Attorney General. Generally, the power of removal is implicit in the power of appointment unless the appointment carries with it a definite term of office or a constitutional or statutory provision limits the removal power.
 

 * * * * * *
 

 Section 324(a) provides that “[t]he court, after notice and a hearing, may remove a trustee ... for cause.” Ms. Richman urges us to apply this requirement to future cases in which the standing trustee might serve. Legislative history suggests to the contrary that section 324(a) applies only to an individual case in which the standing trustee is currently serving. Congress added section 324(b) to the statutory scheme to clarify that “unless the court orders otherwise, removal of a private trustee for cause in one case [pursuant to section 324(a) ] constitutes removal of that trustee in all other cases in which
 
 *1422
 
 the trustee is serving.” Although Congress explicitly added the presumption that removal in one case would constitute removal in all current cases, it omitted any mention of future cases. This omission implies that no property right vests until actual assignment of the ease. Because the standing trustee serves no definite term and Congress made no explicit provision to the contrary, the party with the power of appointment may terminate that appointment at any time by refusing to assign new cases to the standing trustee.
 

 Id.
 
 (citations omitted).
 

 Like the statutory scheme governing standing trustees in Chapter 12 and 13 bankruptcy cases, the statutory scheme governing Chapter 7 panel membership creates no property right in the assignment of future cases. Panel members do not serve definite terms, and Congress has not enacted any provisions restricting a panel member’s removal from active case rotation. Although a panel member may have a property interest in continuing as the trustee for a case to which he or she has already been assigned, the panel member does not have a similar interest in being appointed to future cases. An individual’s appointment to a panel means only that he or she is eligible and available to serve as a trustee, and does not grant an affirmative right to serve. Because Joelson is unable to “offer one rule or understanding which explicitly confers upon [him] an expectancy of appointment in future cases,” he has failed to establish the requisite property interest to support his due process claim.
 
 Richman,
 
 48 F.3d at 1144 (holding that the plaintiff “does not have a claim of entitlement to future eases and therefore does not have a constitutionally protected property right”).
 

 Because Joelson failed to allege the existence or deprivation of any protected liberty or property interest, the district court properly dismissed his Fifth Amendment due process claims.
 

 IY.
 

 Count VI of Joelson’s complaint alleged that the defendants tortiously interfered with his constitutional and statutory rights. The district court held that, to the extent this claim alleged anything other than what was alleged in Counts I-V, it sounded in common law tort, and Joelson’s exclusive remedy is under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80. The district court found that Joelson failed to comply with the administrative prerequisites for bringing an action under the Federal Tort Claims Act, and therefore held that it lacked jurisdiction over this claim as well.
 

 Because the defendants are entitled to dismissal of Joelson’s statutory and constitutional claims, Count VI alleging tortious interference with statutory and constitutional rights is also subject to dismissal. To the extent that Joelson may allege anything other than what he alleged in Counts I-V, he is required to file an administrative claim with the government agency whose activities gave rise to his claim before filing a complaint in federal court under the Federal Tort Claims Act. 28 U.S.C. § 2675(a). Because Joelson does not allege that he has filed an administrative claim, he has not satisfied the jurisdictional prerequisite to obtaining judicial review under the Federal Tort Claims Act, and the district court properly dismissed this claim.
 

 V.
 

 Joelson’s final claim on appeal is that the district court should have held the U.S. Trustee Program unconstitutional. Joelson contends that the program violates the constitutional doctrine of separation of powers, and that it violates the Uniformity Clause, U.S. Const., art. I, § 8, cl. 4 because it is not yet operative in Alabama or North Carolina.
 

 On appeal, the United States argues that Joelson lacks standing to challenge the constitutionality of the U.S. Trustees Program. We agree. To establish standing, a plaintiff must demonstrate, at a minimum, that: (1) he or she personally has suffered an actual or threatened injury; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury is likely to be redressed by a favorable judicial decision.
 
 See Adult Video Ass’n v. United States Dep’t of Justice,
 
 71 F.3d 563, 565 (6th Cir.1995) (citing
 
 Lujan v. Defenders of Wild
 
 
 *1423
 

 life,
 
 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992)). Joelson’s claims regarding the constitutionality of the U.S. Trustees Program do not satisfy these prerequisites for standing.
 

 Joelson does not make it clear whether he is challenging the constitutionality of the U.S. Trustees Program as a citizen concerned with its legality, or whether he is suing on the basis of his alleged due process deprivation. Claims asserted by citizens regarding the proper application of the Constitution are “generally available grievance[s] about government” and do not establish a personal injury-in-faet.
 
 Lujan,
 
 504 U.S. at 573, 112 S.Ct. at 2143. Assuming, however, that Joelson is challenging the constitutionality of the U.S. Trustees Program based on his removal from active case rotation, he is unable to satisfy the second and third prongs of the standing test. Joelson’s alleged injury is not “fairly traceable” to the challenged conduct in that he is unable to show that the U.S. Trustee’s decision to remove him from active case rotation stemmed from any alleged constitutional infirmity in the U.S. Trustees Program rather than concerns about Joelson’s performance as a panel member.
 
 See Allen v. Wright,
 
 468 U.S. 737, 757-59, 104 S.Ct. 3315, 3327-29, 82 L.Ed.2d 556 (1984). In addition, Joelson cannot show that his alleged injury would be redressed by a favorable judicial determination. Invalidation of the U.S. Trustees Program would not necessarily restore Joelson to the panel, and there is no guarantee that an alternative program would provide for such a panel.
 
 See Heimberger v. School Dist. of Saginaw,
 
 881 F.2d 242, 245 (6th Cir.1989) (explaining that there must be a “substantial probability that the claimed injuries will be redressed by the requested relief’ to satisfy the third prerequisite for standing).
 

 Because Joelson does not have standing to challenge the constitutionality of the U.S. Trustees Program, we decline to address the merits of his final claim.
 

 AFFIRMED.
 

 [1]
 

 . Prior to 1986, the Director of the Administrative Office of the United States Courts had the power to appoint and remove panel members. Pursuant to 28 U.S.C. § 604(f), the Director could remove panel members only for cause. The 1986 Act repealed Section 604(f), however, and vested the power to appoint and remove panel members in the U.S. Trustees. The 1986 Act does not restrict the U.S. Trustees’ power to remove panel members. 28 U.S.C. § 586(a).