Arthur **CUTSHALL**, Plaintiff,

v.

Don **SUNDQUIST**, Governor of the state of Tennessee; Defendant.

No. 3:95–0380.

United States District Court, M.D. Tennessee.

Sept. 25, 1997.

Gregory Mitchell, Doramus, Trauger & Ney, Nashville, TN, for Arthur Cutshall.

David Merrill Himmelreich, Jerry Lynn Smith, Office of the Atty. General, Nashville, TN, Kimberly Jennings Dean, Office of the Atty. General, Civil Rights and Claims Div., Nashville, TN, for Ned McWherter.

David Merrill Himmelreich, Albert Lytle Partee, III, Office of the Atty. General, Nashville, TN, for Don Sunquist.

### MEMORANDUM

WISEMAN, Senior District Judge.

Before the court is plaintiff, Arthur Cutshall's motion for summary judgment as well as defendant Governor Donald Sundquist's motion to dismiss or, in the alternative, for summary judgment. Plaintiff challenges the constitutionality of the Tennessee Sexual Offender Registration and Monitoring Act, alleging violations of: the ex post facto laws contained in Article 1 § 10 of the U.S. Constitution and Article 1, §§ 11 and 20 of the

Tennessee Constitution; the prohibition against bills of attainder found in Article 1, § 10 of the U.S. Constitution; the double jeopardy clause of the Fifth Amendment of the U.S. Constitution; the Eighth Amendment of the U.S. Constitution; the right to privacy; the entitlement to substantive and procedural due process; the right to freely travel; and the right to equal protection guaranteed under the federal and state constitutions. Defendant maintains that plaintiff fails to state a claim upon which relief can be granted, as plaintiff allegedly lacks standing and asserts speculative claims. In the alternative, defendant proposes that summary judgment is appropriate based upon the lack of disputed facts. For the reasons stated below, plaintiff's motion for summary judgment is granted insofar as it pertains to the discretionary notification procedures in the Act and defendant's motion for summary judgment is granted insofar as it relates to registration of the plaintiff in the Tennessee sex offender registry.

## I. Background and Procedural History

In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C.A. § 14071 (West 1995), to assist law enforcement in creating a national database of former sex offenders. The passage of the act came in the wake of the brutal rape and murder of seven year-old Megan Kanka in New Jersey. Megan was killed by a neighbor who, unbeknownst to the Kankas, was a convicted sex offender.

Pursuant to a plea agreement, plaintiff Arthur Cutshall was convicted of the offense of aggravated sexual battery in February, 1990. Plaintiff received a sentence of twelve years, with release eligibility after serving thirty percent of his sentence. As a result of accumulation of "good time" credits, plaintiff is scheduled to be released this month.

In 1994, subsequent to plaintiff's conviction, the state of Tennessee enacted the Sexual Offender Registration and Monitoring Act ("the Act"). Tenn.Code Ann. § 40–

39–101 et seq. (1996). The act became effective January 1, 1995 and applies retroactively to those convicted of specified offenses.[1] It provides that anyone who meets the statutory definition of a sexual offender must register with the state by completing a TBI (Tennessee Bureau of Investigation) sexual offender registration form within ten days following release on probation, change of residence, or release from incarceration. Tenn.Code Ann. § 40–39–103 (1996). The TBI form requests the disclosure of the offender's name, date and place of birth, social security number, state and number of any valid driver license, name and address of any probation or parole officer responsible for supervising the offender, the sexual offenses of conviction, the location of the offender's employment, and the offender's address and length of residence at that address. Id. For all offenders convicted prior to July 1, 1997, this information remains confidential with the exception that the TBI "shall release relevant information deemed necessary to protect the public concerning a specific sexual offender." Tenn.Code Ann. § 40–39–106(c).

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476–1480 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. In responding to a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." Id. As there are no genuine issues of material fact, summary judgment is appropriate.

---

1. These offenses include aggravated rape, rape, sexual battery, statutory rape, aggravated prostitution, sexual exploitation of a minor, aggravated sexual exploitation of a minor, especially aggra- vated sexual exploitation of a minor, incest, and attempt, solicitation or conspiracy to commit any of the above listed offenses. Tenn.Code Ann. § 40–39–102(3)

## B. Procedural Due Process

■ Plaintiff contends that the Tennessee Act violates procedural due process. In order to assess the constitutionality of the Act, the court must distinguish between the registration provisions and the notification provision. All offenders must register with the TBI. There is nothing inherent in the act of registering that serves to trigger the protections of procedural due process. The Act, however, also contains a provision allowing law enforcement officials to disclose registry information at their discretion. Law enforcement officials must only determine that public safety necessitates disclosure of the information. No guidelines or procedures exist to rein in this broad power held by law enforcement. The court therefore focuses on the discretionary notification provision in assessing the constitutionality of the Act under the due process clause.

■ In order to trigger the protections of procedural due process, plaintiff must demonstrate infringement by the state upon a property or liberty interest. *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). While plaintiff alleges that his reputation will be sullied if the registry information is disclosed, the Supreme Court has held that damage to reputation alone is not sufficient to trigger procedural due process. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). In examining other cases where due process was deemed necessary, the Court found that "as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* at 711, 96 S.Ct. at 1165. Thus, to invoke the protections of procedural due process, plaintiff must assert injury to a liberty or property interest in addition to damage to his reputation. This standard evolved into the "stigma plus" test. *W.P. v. Poritz,* 931 F.Supp. 1199, 1219 (D.N.J.1996) (internal citations omitted). In the instant case, plaintiff has alleged an infringement upon his right to privacy and implicitly upon his right to follow a chosen profession, as well as the damage to his reputation resulting from public notification of the registry information.

The court must assess whether these rights exist and then determine whether notification would violate these rights in such a way as to offend due process. Finally, if process is due, the court must determine what form that process should take.

### 1. Right to Privacy

■ "A right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). In 1965, the Supreme Court first held that there was a fundamental right to privacy, based in the penumbra of fundamental rights that surrounded the First Amendment. This right to privacy, originally extended to the right of couples to marital privacy, has since been broadened to include a wide variety of rights related to procreation, family, and child-rearing. *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

In *Whalen v. Roe,* 429 U.S. 589, 598–599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), the court defined the right to privacy as involving two different types of interests: "the individual interest in avoiding disclosure of personal matters" and "the interest in independence in making certain kinds of important decisions." Lower courts have interpreted the first of these interests to establish a constitutional right to privacy in certain types of personal information, especially medical records, as well as the doctor-patient relationship. *Woods v. White,* 689 F.Supp. 874, 875 (E.D.Wis.1988), *affirmed* 899 F.2d 17 (7th Cir.1990). Although the Sixth Circuit reaffirmed its holding that "the Constitution does not encompass a general right to nondisclosure of private information," lower courts within the circuit have still held that certain types of private information are protected by a right to privacy and need not be disclosed. *Doe v. Wigginton,* 21 F.3d 733, 740 (6th Cir.1994); *Mann v. University of Cincinnati,* 824 F.Supp. 1190, 1196 (S.D.Ohio 1993). The *Mann* court held that the right to privacy protected individuals from disclosure of personal information, particularly medical records. 824 F.Supp. at 1196. Although this right to privacy in nondisclosure of medical records is often outweighed by a

governmental interest in disclosure of those records to certain parties, this governmental interest does not negate the general recognition of the underlying fundamental right. *Gutierrez v. Lynch,* 826 F.2d 1534, 1539 (6th Cir.1987) (holding that legitimate requests for medical information by the state do not constitute an invasion of privacy); *Mann,* 824 F.Supp. at 1197 (explaining that courts must do a balancing test of a patient's right to privacy in her medical records and the potential interest of the state in accessing those records.); *Doe v. City of Cleveland,* 788 F.Supp. 979, 985 (N.D.Ohio 1991) (holding that the state had no legitimate interest in disclosing the fact that prisoner had AIDS to his former employer and that his privacy interest was thereby violated).

The Supreme Court has also found a right to privacy stemming from the Ninth Amendment. In his concurrence in *Griswold v. Connecticut,* Justice Goldberg opined that "the Ninth Amendment shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive." 381 U.S. 479, 492, 85 S.Ct. 1678, 1686, 14 L.Ed.2d 510 (1965). Goldberg further stated that the right to privacy, particularly in the context of procreation, constituted one of those rights fundamental to the existence of a free people, yet not specifically mentioned in the first eight amendments to the Constitution. *Id.* at 491–92, 85 S.Ct. at 1685–86. The inclusion of a right to privacy among fundamental rights did not create an unauthorized extension of the Constitution, but rather served as a legitimate means to further develop the concept of fundamental rights inherent in the Constitution. *Id.* at 492–93, 85 S.Ct. at 1686–87. The above principles lay the groundwork for plaintiff's right to privacy implicated by the notification procedures in the Tennessee Act.

In *Doe v. Poritz* the New Jersey Supreme Court held that convicted sex offenders possessed a privacy interest grounded in the U.S. Constitution protecting the release of registry information to the public. 142 N.J. 1, 100, 662 A.2d 367 (1995). The court recognized that the branding of a sex offender as "potentially currently dangerous" by disclosing his registry information to the public, as well as the offender's interest in nondisclosure, impinged upon the privacy interests of a convicted sex offender. *Id.* Plaintiff Cutshall possesses the same privacy interest in the information contained in Tennessee's sexual offender registry.

The Supreme Court also has recognized a liberty interest in personal privacy. *U.S. Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). The Court held that disclosure of FBI rap sheets to third parties constituted "an unwarranted invasion of personal privacy" for the purposes of the Freedom of Information Act. *Id.* at 751, 109 S.Ct. at 1470–71. The information contained in the rap sheets mirrors that in the sexual offender registry, including such items as: name, date of birth and history of arrests, charges, convictions, and incarcerations. *Id.* at 752, 109 S.Ct. at 1471. The Court recognized that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person ..." *Id.* at 764, 109 S.Ct. at 1477. Despite the fact that individual pieces of this information were accessible to the public, the Court, noting state restrictions on access to criminal history summaries, held that a privacy interest existed in the compilation of this information in a single rap sheet. *Id.* at 753, 764, 109 S.Ct. at 1471–72, 1477.

■ The state of Tennessee's constitutional jurisprudence also recognizes an individual right to privacy. The Supreme Court of Tennessee first acknowledged the right to privacy in *Davis v. Davis,* 842 S.W.2d 588 (Tenn.1992). The Court stated, "Based on both the language and the development of our state constitution, we have no hesitation in drawing the conclusion that there is a right of individual privacy guaranteed under and protected by the liberty clauses of the Tennessee Declaration of Rights." *Id.* at 600.

The Tennessee Court of Appeals recently held that not only does the state constitution support an individual right to privacy, but

this right extends more broadly than the right to privacy based in the U.S. Constitution. *Campbell v. Sundquist,* 926 S.W.2d 250, 261 (Tenn.Ct.App.1996) (citing *Davis* ) The *Campbell* court noted that, "The right to privacy, or personal autonomy ('the right to be let alone'), while not mentioned explicitly in our state constitution, is nevertheless reflected in several sections of the Tennessee Declaration of Rights ..." *Id.* at 260. Therefore, not only does plaintiff have a privacy interest in the disclosure of registry information based upon the federal Constitution, but he also possesses this right drawn from state law.

### 2. Right to Employment

■ Plaintiff also asserts that his ability to find a job would be hampered were information about his past conviction to be disclosed. The right to pursue employment of one's choosing rests within those liberties guaranteed by the Fourteenth Amendment. *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959); *Joelson v. U.S.,* 86 F.3d 1413, 1420 (6th Cir.1996); and *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 602 (3d Cir.1979).

■ In order to demonstrate infringement upon this liberty interest, "a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession. A plaintiff must also allege in his or her complaint that the stigmatizing information was publicly disclosed." *Joelson,* 86 F.3d at 1420 (internal citations omitted).

Disclosure of registry information to the public fulfills the elements of the test set out in *Joelson.* As the New Jersey Supreme Court held, disclosure of registry information to the public, by implicitly branding that offender as a repetitive or compulsive sex offender, creates more stigma than the original conviction. *Doe v. Poritz,* 142 N.J. at 105, 662 A.2d 367. This certainly meets the element of demonstrating stigmatizing governmental action. There is no question that prospective employers would not want to hire someone they thought posed a danger to society, thereby effectively foreclosing employment opportunities, as required in *Joel-son.* As plaintiff only contends that this interest would be infringed upon in the event of disclosure, the last part of the *Joelson* test is satisfied as well.

### 3. "Stigma Plus"

The additional injury to plaintiff's reputation which would result from disclosure of registry information to the public (as the stigma) coupled with the loss of the rights to privacy and employment (as the plus) suffices to meet the "stigma plus" test set out in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); and in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Plaintiff therefore deserves the protection of procedural due process before law enforcement may disclose information about him from the sex offender registry to those not involved in law enforcement.

The New Jersey Supreme Court in *Doe* held that the combination of harm to the plaintiff's reputation and the intrusion into his right to privacy sufficed to create a protectible interest deserving of procedural due process. *Doe v. Poritz,* 142 N.J. at 103, 662 A.2d 367. While it may appear that a convicted sex offender has little remaining interest in his reputation, the court held that "classification as a 'repetitive' and 'compulsive' sex offender ... inflicts a greater stigma than that resulting from the conviction for a sex offense" which does not entail classification as either "repetitive" or "compulsive." *Id.* at 105, 662 A.2d 367. Thus, although the plaintiff's conviction damaged his reputation, the additional harm incurred from public notification and all it implies, combined with the infringement on plaintiff's right to privacy, suffices to trigger due process protections. Although the court recognized the state's compelling interest in disclosing information to the public under certain circumstances, it held that the convicted offender has the right to traditional due process prior to the state acting on its interest. *Id.* at 103, 662 A.2d 367.

While the state may have an overriding interest in the public safety of its citizens and thereby in the dissemination of information regarding dangerous members of the com-

munity, the convicted offender still has enough of a privacy right to mandate an opportunity to challenge the validity of the information being disclosed by the state prior to disclosure. The state's interest in public safety does not outweigh the interest of the individual offender in not having false information disseminated which could permanently impair his liberty. A convicted sexual offender is therefore entitled to procedural due process prior to the dissemination of his registry information by law enforcement.

### 4. Procedural Requirements

Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner'." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (internal citations omitted). To comport with these requirements, plaintiff should be afforded the opportunity to be heard, including presenting the testimony of expert witnesses, on the issue of whether or not disclosure of his registry information is in fact necessary to protect the public. The Third Circuit required similar protections in its recent decision in *E.B. v. Verniero,* 119 F.3d 1077 (3rd Cir.1997). The New Jersey version of sexual offender registration and notification requires the classification of offenders into three tiers based upon the risk that they will re-offend. *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995). Any offender classified as Tier 2 or Tier 3 is entitled to a judicial proceeding to determine the validity of that classification before the public is notified of that offender's status. Not only did the *Verniero* court recognize the importance of these proceedings, but it held further that due process requires that the burden of persuasion in such a proceeding fall upon the prosecutor. *Verniero,* at 1109. Plaintiff is entitled to similar protections prior to disclosure of information regarding his status as a convicted sexual offender.

Currently, the Tennessee statute allows disclosure simply on the basis of the discretion of law enforcement officials, with absolutely no guarantees that the disclosure is truly necessary. No procedures exist for law enforcement to follow in determining whether or not a convicted sex offender may be dangerous in the future. While the inter-est in public safety is compelling enough to allow for disclosure of registry information in certain circumstances, it violates due process to permit disclosure of registry information without providing the offender the opportunity to refute law enforcement's assessment of the risk of allowing that offender to blend anonymously back into society. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential" (internal citations omitted). *Paul v. Davis,* 424 U.S. at 707, 96 S.Ct. at 1163. Dissemination of information from the sexual offender registry without the control of anyone other than local law enforcement and without an opportunity for hearing offends basic concepts of fairness. To remedy this deficiency, the state must provide a convicted offender with notice and opportunity to be heard prior to releasing this information to the public.

## IV. Conclusion

Because the court holds that the discretionary disclosure provisions of the Tennessee Sexual Offender Monitoring and Registration Act violates the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, it does not reach the merits of the other constitutional challenges to the Act.

The court does hold that while the registration provisions of the Tennessee Act meet constitutional muster, the notification procedures offend notions of due process. Accordingly, discretionary notification of the type allowed by the statute must be preceded by a hearing with an opportunity to present witnesses, expert or otherwise, in which the law enforcement officials wanting to release the information must bear the burden of proving that public safety necessitates release of the offender's registry information.

An order granting plaintiff's motion for summary judgment regarding the notification provisions of the Act and granting defendant's motion for summary judgment regarding the registration provisions shall enter.

## ORDER

For the reasons put forth in the accompanying memorandum, the court hereby

GRANTS in part and DENIES in part plaintiff Arthur Cutshall's motion for summary judgment. The court further GRANTS in part and DENIES in part defendant Governor Don Sundquist's motion for summary judgment. Specifically, the court GRANTS plaintiff's motion insofar as it relates to the constitutionality of the notification provisions of the Tennessee Sex Offender Registration Act, finding that the notification provisions violate the due process rights of plaintiff. The court GRANTS defendant's motion with regard to the registration provisions, finding that they do not violate the Constitution as alleged by plaintiff.