# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 22, 2016 Session

## JACK WAYNE BUTLER v. TENNESSEE BOARD OF NURSING

**Appeal from the Chancery Court for Davidson County**
**No. 15135III    Ellen H. Lyle, Chancellor**

_____

**No. M2016-00113-COA-R3-CV – Filed October 25, 2016**

_____


An applicant for a nursing license filed a petition for a writ of certiorari regarding the decision of the Tennessee Board of Nursing to deny his license. The trial court ruled: (1) that the applicant was not entitled to a contested case prior to the denial of his initial nursing license; (2) that the Tennessee Board of Nursing correctly found that the applicant's license could be denied due to his "fraud or deceit" in his efforts to procure his license; and (3) that the Tennessee Board of Nursing could not rely on an expunged conviction to establish the statutory ground of "guilty of a crime." Both parties appeal. Discerning no error, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

W. Gary Blackburn and Raymond Throckmorton, Nashville, Tennessee, for the appellant, Jack Wayne Butler.

Herbert H. Slatery, III, Attorney General and Reporter; Andreé S. Blumstein, Solicitor General; Sue A. Sheldon, Senior Counsel, for the appellee, Tennessee Board of Nursing.


## OPINION

### Background

In December of 2013, Petitioner/Appellant Jack Wayne Butler ("Appellant") applied for licensure as a registered professional nurse by examination to the Defendant/Appellee Tennessee Board of Nursing ("the Board"). In his application, Appellant asserted that he had obtained his baccalaureate degree in nursing in the same

month. The application for licensure contained the following question: "Have you ever been convicted of or plead guilty to a misdemeanor or felony other than a minor traffic violation?" If the answer to the above question was in the affirmative, the applicant was required to submit certified copies of the warrants, judgments, and/or convictions, evidence of completion of all requirements, as well as a letter "that describes the circumstances that resulted in arrest and conviction." Appellant indicated in his application that he had been convicted of a misdemeanor or felony.

Although the record is not clear as to whether it was attached to his initial application, at some point, Appellant sent the Board a letter in an effort to explain his criminal conviction. In the letter, Appellant stated that he pleaded nolo contendere to a misdemeanor charge in Oklahoma in 1994. In the letter, among other things, Appellant alleged that he was arrested because a woman in his past: (1) coaxed her thirteen year old daughter into accusing Appellant of kissing her; and (2) coaxed the daughter's friend into claiming that she witnessed the incident. Allegedly, in exchange, the woman promised to give the girls "all the drugs, alcohol, money, and boys" that they wanted. As discussed in detail *infra*, the letter contained additional allegations, including an assault against him, two extortion plots, and the death of Appellant's mother. According to Appellant's letter, as a result of this series of events, he pleaded nolo contendere to the charge of "outraging the public decency." Appellant also submitted to the Board a certified copy of a "Court Minute" from Cleveland County, Oklahoma. The Court Minute showed that Appellant pleaded nolo contendere to the reduced charge of outraging public decency and received a one-year suspended sentence. According to the administrative record, Appellant informed the Application Review Committee ("ARC"), an arm of the Board charged with reviewing applications, that he could not obtain any other records regarding his conviction.

On January 16, 2014, the Board sent a letter to Appellant informing him that he was required to appear personally before the ARC and bring certified copies of, *inter alia*, citations and judgments. Appellant's appearance before the ARC occurred as scheduled on January 30, 2014; Appellant appeared personally and was not represented by counsel at that time. On or around January 22, 2014, a Board member was able to obtain additional documents regarding Appellant's charge and conviction in Oklahoma. The documents indicated that Appellant had been arrested in December 1994 and was initially charged with two counts of a serious felony. As previously discussed, however, Appellant eventually pleaded nolo contendere to one misdemeanor charge of outraging public decency.

On January 31, 2014, the ARC sent a letter to Appellant informing him that it would recommend denial of his application to the Board at a later meeting based upon the statutory grounds of: (1) guilty of a crime; and (2) guilty of fraud or deceit in attempting to procure a license. *See* Tenn. Code Ann. § 63-7-115(a)(1) (discussed in detail, *infra*).

- 2 -

Thereafter, Appellant obtained counsel and requested that he be permitted an opportunity to present additional evidence from individuals involved in Appellant's arrest and plea in Oklahoma. Appellant's counsel indicated that he was confident that he would be able to obtain the necessary evidence by the Board's meeting in April 2014. On February 7, 2014, Appellant's counsel sent an additional letter to the Board indicating his efforts to obtain additional evidence and noting that he and his client were pursuing the option of expunging the conviction in Oklahoma. On March 6, 2014, Appellant's counsel sent another letter to the Board indicating Appellant's desire to withdraw his application for licensure as a registered nurse.

On March 17, 2014, the ARC again sent Appellant a letter informing him of its decision to recommend denial of his licensure application. The letter indicated that the decision would be made by the Board at its May 15, 2014 meeting and that both Appellant and his counsel were free to attend. The letter did not specifically mention Appellant's request to obtain additional proof or his request to withdraw his application. As such, on March 26, 2014, Appellant's counsel again wrote the Board to request withdrawal of Appellant's application. On April 4, 2014, the Board responded by letter that it did not believe that it was required to allow Appellant to withdraw his application, as the application had already become public record.

On April 14, 2014, Appellant filed an application in Davidson County Chancery Court for emergency judicial review of the ARC's refusal of his request to withdraw his application and to enjoin the Board from considering his application. On August 15, 2014, Appellant's application for emergency review was dismissed based upon Appellant's failure to exhaust his administrative remedies.

In the meantime, the ARC sent Appellant a letter on August 6, 2014, regarding Appellant's request for additional information regarding the ARC's finding of fraud or deceit. According to the ARC, as discussed in detail, *infra*, it based its findings largely on Appellant's letter detailing the bizarre series of events upon which Appellant placed the blame for his criminal conviction, which the Board found deceitful.

Appellant again appeared before the Board, this time represented by counsel, on August 21, 2014. At that time, the Board agreed to defer consideration of Appellant's application until its December 4, 2014 meeting. On December 4, 2014, the Board finally considered Appellant's application. Appellant and his counsel appeared and presented an Order of Expungement filed on December 4, 2014, by the Cleveland County, Oklahoma district court. Both Appellant and his counsel were allowed to address the Board. Nevertheless, at the conclusion of the meeting, the Board voted to affirm the ARC's recommendation and deny Appellant's application. The decision was confirmed in writing by letter dated December 8, 2014. The letter specifically stated that the denial of Appellant's license was based upon the Board's finding that Appellant had been found

guilty of a crime and that he had committed fraud or deceit in the procurement of his license.

Thereafter, Appellant filed a Petition for Common Law Writ of Certiorari or, in the Alternative, Petition for Judicial Review of Administrative Decision under the Uniform Administrative Procedures Act ("UAPA"). Because no contested case was conducted, the trial court reviewed the Board decision denying Appellant's application for licensure pursuant to the common law writ of certiorari. Appellant challenged the Board's decision on the grounds that: (1) due process required that he be provided a contested case hearing prior to denying his application; and (2) denial of the license was erroneous because it was based on an expunged criminal conviction. On February 2, 2015, the trial court granted the writ of certiorari and ordered the administrative record be transmitted to the clerk. The administrative record was duly filed on May 12, 2015.

On November 17, 2015, the trial court entered a memorandum and order affirming the Board's denial of licensure and dismissing Appellant's petition. The trial court first concluded that a contested case was not required for the Board to deny Appellant's request for initial licensure. Further, the trial court found that Appellant received the necessary process required to satisfy both substantive and procedural due process because he had the opportunity to, and did, appear before both the ARC and the Board on at least three separate occasions. Next, the trial court found that, under ***Miller v. Tennessee Board of Nursing***, 256 S.W.3d 225 (Tenn. Ct. App. 2007), the expunction removed evidence that Appellant was "guilty of a crime"; the trial court therefore ruled that the Board's denial of Appellant's application based on this ground was arbitrary, capricious, and illegal.[1] The trial court, however, concluded that the Board could consider Appellant's letter sent in connection with his application because of its relevance to the ground of "fraud or deceit." The court ruled that there was material evidence of fraud and deceit based on the fact that: (1) Appellant's letter was filled with "disturbing, strange, and incredible content"; and (2) Appellant's claim to the ARC that he was unable to obtain a copy of documents related to his arrest and conviction in Oklahoma, when a Board member was easily able to obtain such information. On November 23, 2015, the trial court entered a supplemental order. On November 25, 2015, Appellant filed a motion to alter or amend the trial court's ruling. On December 23, 2015, the trial court granted Appellant's motion insofar as to provide additional findings of fact and conclusions of law supporting its ruling. Otherwise, the trial court denied Appellant's motion to alter or amend. Appellant filed a timely notice of appeal.

**Issues Presented**

---

[1] In recent cases, the Tennessee Supreme Court appears to use "expungement" and "expunction" interchangeably. *See **Rodriguez v. State***, 437 S.W.3d 450, 452, 456 (Tenn. 2014) (using both terms); ***State v. L.W.***, 350 S.W.3d 911, 917–18 (Tenn. 2011) (same). According to *Garner's Dictionary of Legal Usage*, however, the term "expungement" is "a needless variant[.]" Bryan Garner, *Garner's Dictionary of Legal Usage* 346 (3d ed. 2011). Accordingly, we will use "expunction" throughout this Opinion.

Appellant raises the following issues, which are taken from his brief and slightly restated:

> 1. Whether the trial court erred in finding Appellant was not entitled to a contested case hearing in the face of the Board's expressed intent to deprive him of his ability to pursue his chosen profession of nursing throughout the United States?
> 2. Whether the trial court erred in not finding arbitrary and capricious the Board's finding of fraud or deceit merely because Appellant failed but the Board staff succeeded in obtaining inadmissible records from a foreign state?
> 3. Whether an Administrative Law Judge could have provided Appellant due process by ruling on misunderstood legal principles, including the admissibility of evidence, including Appellant's letter to [the ARC]?

In the posture of appellee, the Board raises the following issue: Whether the trial court erred in concluding that the Board was precluded from denying Appellant a license on the statutory ground of "guilty of a crime"?

## Discussion
## I. Contested Case

Appellant first asserts that the Board erred in denying him a contested case. The issue of whether an applicant for an initial license to practice as a nurse is entitled to a contested case has never been specifically addressed by Tennessee courts. In support of his argument, Appellant cites several interlocking statutory provisions from the UAPA. To the extent that our review of this issue involves statutory interpretation, our consideration "is guided by well-established rules of statutory construction. The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)). "[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). Finally, we presume that the Tennessee General Assembly "has knowledge of its prior enactments and knows the state of the law at the time it passes legislation." *Owens*, 908 S.W.2d at 926 (citing *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 810 (Tenn. 1994)).

First, Tennessee Code Annotated Section 4-5-102(3) defines a "contested case" as "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing." Thus, Section 4-5-102(3) indicates that a contested case is required where either a statute or constitutional provision mandates that the agency's decision be made only after the opportunity for a hearing. Appellant argues in this case that both a statute and a constitutional doctrine mandate that the denial of his initial nursing license be made after a contested case. We begin first with Appellant's statutory argument.

First, Appellant asserts that the denial of his initial license was required to be determined based upon the contested case procedure set forth in Tennessee Code Annotated Section 4-5-320. In relevant part, Section 4-5-320(a) provides: "When the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply." The above statute, however, simply does not mandate a contested case for every grant or denial of an initial license. Rather, Section 4-5-320(a) merely indicates that a hearing in such case may be required where the grant or denial of the license "is required to be preceded by notice and opportunity to be heard." Indeed, the statute proceeds to state where such notice and opportunity are implicated:

> No revocation, suspension, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct that warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.

Tenn. Code Ann. § 4-5-320(c). Notably absent from the above provision is a requirement that the grant or denial of initial licenses be preceded by notice and an opportunity to be heard.

Outside of the nursing license context, this Court has held that a contested case is not implicated under Section 4-5-320 where the agency decision involves the grant or denial of an initial license. For example, in *Owens v. State Board of Architectural & Engineering Examiners*, No. 89-327-II, 1990 WL 50722 (Tenn. Ct. App. Apr. 25, 1990), the plaintiff appealed from the trial court's decision dismissing his petition for review of an agency decision denying him the right to practice as an engineer in the State. *Id.* at *1. The Court of Appeals first considered whether the plaintiff was entitled to a contested case regarding the denial of his right to practice as an engineer. The Court of Appeals

noted that Section 4-5-102, quoted in relevant part above, "requires that a 'contested case' be a proceeding in which an 'opportunity for a hearing' is mandatory." *Id.* at *3. The Court of Appeals held, however, that "[n]othing" in the statutory scheme governing contested cases or the licensure of engineers "require[s] that the grant or refusal of an engineer's license to be preceded by an opportunity for a hearing. Accordingly, the decision under review is not a 'contested case[,'] even though it is a proceeding designated as one which *may* be considered a 'contested case[.]'" *Id.* (emphasis in original) The Court of Appeals therefore affirmed the decision of the agency under the limited standard applicable in a common law writ of certiorari.

In a similar case, *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Commission*, 798 S.W.2d 531 (Tenn. Ct. App. 1990), the applicant for an initial race meeting license appealed the Tennessee State Racing Commission's ("commission") denial of the license.[2] This applicant, like the applicant in the previous case, raised the issue of whether it was entitled to a contested case under Section 4-5-102. The Court of Appeals determined that a contested case was not implicated by the denial of the applicant's initial license. As this Court explained:

> Licensing proceedings will be treated as "contested cases" only if they contain three essential elements. They must be a "proceeding" conducted by an "agency" after the opportunity for a "hearing." *See* Tenn. Code Ann. § 4-5-102(3); Levinson, *Contested Cases Under the Tennessee Uniform Administrative Procedures Act*, 6 Mem. St. U. L. Rev. 215, 215 (1976). Proceedings lacking any of these ingredients are not contested cases.

*Mid-South Indoor Horse Racing*, 798 S.W.2d at 537.

In order to determine whether the required "ingredients" were present, the Court of Appeals first considered the UAPA, the statutory scheme governing contested cases. Ultimately, the Court of Appeals held that "[t]he UAPA does not require administrative agencies to conduct contested case hearings unless the proceeding is one of those included in Tenn. Code Ann. § 4-5-320(c)." *Id.* at 539. Because the denial of an initial license is not listed under Section 4-5-320(c), the Court of Appeals held that the UAPA offered no support for the applicant's contention that it was entitled to a contested case. *Id.*

Likewise, the Court of Appeals held that the Racing Control Act of 1987 ("Racing Control Act") did not require contested cases in order to grant or deny an initial license. *Id.* First, the Court noted that the Racing Control Act contained no specific requirement

---

[2] The applicant filed its application in an effort to conduct horse racing in Memphis. *Mid-South Indoor Horse Racing*, 798 S.W.2d at 534. Specifically, the applicant "proposed to conduct hackney pony races at the Mid–South Coliseum using robot jockeys." *Id.*

that the commission "conduct contested case hearings in initial race meeting licensing proceedings." Instead, the Racing Control Act delegated to the commission the responsibility of promulgating the procedures for initial race meeting licensing procedures. *Id.* at 540. Although the regulations afforded applicants the "opportunity to make an oral presentation of its application," the Court of Appeals held that a contested case was not implicated because "an 'oral presentation' is not equivalent to a contested case proceeding or to any other quasi-judicial hearing." *Id.* at 540 (quoting Tenn. Admin. Comp. ch. 1245-3-.34). Rather, the Court of Appeals held that:

> At the most, Rule 1245-3-.34 entitles an applicant for an initial race meeting license to one appearance to persuade the commission to grant its application. It does not require the commission to give the applicant formal notice of its problems or concerns about the application, and it does not require the commission to provide the applicant with an opportunity to present witnesses or to cross-examine persons who present information to the commission.

*Id.* at 540. Under these circumstances, the Court of Appeals held that no statutes required the type of quasi-judicial hearing necessary to implicate the UAPA contested case requirements. *Id.* (proceeding to consider and reject the applicant's argument that it was entitled to a contested case under constitutional principles).

The same is true in this case. First, as previously discussed, the UAPA does not mandate a contested case regarding the denial of an initial license because that type of action does not involve the "revocation, suspension, or withdrawal" of a license. *See* Tenn. Code Ann. § 4-5-320(c); *see also* **Mid-South Indoor Horse Racing**, 798 S.W.2d at 539. Accordingly, we must consider the statutory scheme governing the licensure of nurses, Tennessee Code Annotated Section 63-7-101, et seq. Appellant points to no provisions in the code to support his argument that he was entitled to a contested case. Indeed, the only section of Title 63 cited in Appellant's brief is Tennessee Code Annotated Section 63-7-115(a) and (b). We will therefore consider whether these provisions implicate the right to a contested case.

Section 63-7-115 provides, in pertinent part:

> (a)(1) The board has the power to deny, revoke or suspend any certificate or license to practice nursing or to otherwise discipline a licensee upon proof that the person:
>
> (A) Is guilty of fraud or deceit in procuring or attempting to procure a license to practice nursing;
> (B) Is guilty of a crime;
> (C) Is unfit or incompetent by reason of negligence, habits or other cause;

(D) Is addicted to alcohol or drugs to the degree of interfering with nursing duties;

(E) Is mentally incompetent;

(F) Is guilty of unprofessional conduct; or

(G) Has violated or attempted to violate, directly or indirectly, or assisted in or abetted the violation of or conspired to violate any provision of this chapter or any lawful order of the board issued pursuant thereto.

(2) This section shall also apply to members of the board.

(b) The board shall have concurrent enforcement power, pursuant to § 63-1-122, with the division to revoke or suspend any certificate of fitness of a nurse practitioner who has been issued a certificate of fitness pursuant to § 63-1-104 or to otherwise discipline such person in accordance with the provisions of this section.

Nothing in Section 63-7-115 or otherwise in Title 63, Chapter 7 or the relevant regulations, entitles applicants for initial nursing licenses to the type of quasi-judicial proceeding implicated by the contested case procedures. *See also* Tenn. Comp. R. & Regs. 1000-01-.13 (providing guidance as to what constitutes misconduct or a crime pursuant to Section 63-7-115). We note that like in ***Mid-South Indoor Horse Racing***, the nursing licensure statutory scheme does not require that the Board give the applicant any formal notice of its concerns regarding the licensure application, nor does it provide the applicant with the opportunity to present evidence or cross-examine witnesses. *See **Mid-South Indoor Horse Racing***, 798 S.W.2d at 540; *c.f.* Tenn. Code Ann. § 63-7-116(e) (allowing a licensed nurse charged in disciplinary matter the right "to appear personally and by counsel to cross-examine witnesses to produce evidence and witnesses"). Instead, it appears that the Board in this case followed a similar procedure to the one utilized by the commission in ***Mid-South Indoor Horse Racing***—allowing Appellant the opportunity to appear before the Board and plead his case. As such, we cannot conclude that the statutory scheme governing nursing licensure mandates that a contested case occur with regard to the grant or denial of an initial license.

Appellant next argues, however, that regardless of whether the statute governing the licensure of nurses requires a contested case, constitutional principles mandate a contested case in this particular case. The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides, in part, that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." *See **Malloy v. Hogan***, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964) (holding that the Fifth Amendment is applicable to the states through the Fourteenth Amendment). In addition, the Fourteenth Amendment to the United States Constitution provides, in part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." The corresponding provision of the Tennessee Constitution provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or

deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8. As such, while neither the UAPA nor Tennessee Code Annotated Section 63-7-101 et seq. entitled Appellant to a contested case, he still could be entitled to a hearing if he has a constitutionally protected interest in the initial nursing license.

Here, Appellant concedes that "a routine application for a professional license in Tennessee does not require a contested case hearing." Indeed, Appellant does not assert that he holds a property interest in his initial nursing license. Rather, Appellant argues that his liberty interests were implicated because he was made "the subject of hostile proceedings designed and intended to deprive him the opportunity to practice as a registered nurse in all [fifty] states because the denial and the basis for denial would be reported on the national . . . database." In fact, Appellant takes issue with the trial court's mention of property interests in its ruling, stating that the trial court "conflated principles of property interests and liberty interests" and apparently mischaracterized his argument. Based on Appellant's repudiation of any claimed property interest, we will confine our review in this appeal to only the question of whether Appellant's liberty interests were implicated by the denial of his initial nursing license in this case.

"A person has a protected liberty interest in his 'reputation, good name, honor, and integrity,' as well as in 'being free to move about, live, and practice his profession without the burden of an unjustified label of infamy.'" *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996) (citing *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989)). "Injury to reputation, standing alone, [however,] is not a liberty interest protected by the Fourteenth Amendment." *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) (citing *Paul v. Davis*, 424 U.S. 693, 708–09, 96 S. Ct. 1155, 1164, 47 L. Ed. 2d 405 (1976)). Rather:

> To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession. [*Board of Regents v.*] *Roth*, 408 U.S. [564,] 573–74, 92 S. Ct. [2701,] 2707–08 [(1972)]. A plaintiff must also allege in his or her complaint that the stigmatizing information was publicly disclosed. *Christian v. Belcher*, 888 F.2d 410, 416 (6th Cir.1989).

*Joelson*, 86 F.3d at 1420.

In *Ludwig v. Board of Trustees of Ferris State University*, 123 F.3d 404 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit clarified the requirements to prevail in a claim involving the deprivation of a liberty interest, adopting a five element test. First, the Sixth Circuit held that "the stigmatizing statements must be made

in conjunction with the plaintiff's termination from employment." ***Id.*** at 410 (citing ***Paul***, 424 U.S. at 709–10, 96 S. Ct. at 1164–65 ("[T]he defamation had to occur in the course of the termination of employment[.]"). The plaintiff, therefore, "must allege the loss of a governmental right, benefit or entitlement[.]" ***Mertik***, 983 F.2d at 1363.

Second, the allegations against the employee cannot involve "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." ***Ludwig***, 123 F.3d at 410 (citing ***Siegert v. Gilley***, 500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)). As the Sixth Circuit explained: "'A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation.'" ***Id.*** (quoting ***Chilingirian***, 882 F.2d at 205–06 n.8). Instead, the statements made during the course of the employee's discharge must have the possibility to "'seriously damage his standing and associations in his community' or . . . impose 'on him a stigma or other disability that [would] foreclose[] his freedom to take advantage of other employment opportunities.'" ***Id.*** (quoting ***Roth***, 408 U.S. at 573, 92 S. Ct. at 2707)). Allegations of immorality or dishonesty may rise to this level. ***Id.***; *but see* ***Mazaleski v. Treusdell***, 562 F.2d 701, 712 (D.C. Cir. 1977) ("In one of its most recent decisions delimiting the scope of the liberty clause of the fourteenth amendment, the Supreme Court has seriously undermined if not altogether obliterated the protection previously accorded one's general reputation in the community irrespective of any related interest in employment.") (citing ***Paul v. Davis***, 424 U.S. 693, 701, 706, 710-11, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) ("In each of these cases, as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment. But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the 'liberty' or 'property' recognized in those decisions.")).

Third, the negative allegations must be made public. ***Id.*** Fourth, the plaintiff must assert that the allegations against him or her were false. ***Id.*** (citing ***Codd v. Velger***, 429 U.S. 624, 628, 97 S. Ct. 882, 884–85, 51 L. Ed. 2d 92 (1977)). Finally, the public disclosure of the allegations must have been voluntary. ***Id.*** (citing ***Chilingirian***, 882 F.2d at 206). If the five elements are met, the plaintiff is entitled to notice and an opportunity to be heard through a "name-clearing hearing," where such a hearing has been requested. ***Id.*** "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." ***Quinn v. Shirey***, 293 F.3d 315, 320 (6th Cir. 2002). The purpose of a name-clearing hearing is to afford the plaintiff an "'opportunity to be heard to refute the charges disseminated against him.'" ***Id.*** at 321 (quoting ***Ludwig***, 123 F.3d at 410); *see also* ***Baden v. Koch***, 799 F.2d 825, 830 (2d Cir. 1986) ("In order to succeed on his liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a post-removal opportunity to refute the false charges that led to his

removal."); ***In re Selcraig***, 705 F.2d 789, 796 (5th Cir.1983) ("A constitutional deprivation of liberty occurs when there is some injury to employment . . . in addition to damage to reputation and a subsequent denial of procedural due process [via a name-clearing hearing or the like] to redress that injury."). The hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." ***Quinn***, 293 F.3d at 321 (quoting ***Ludwig***, 123 F.3d at 410));

In his brief to this Court, Appellant fails to address any of the above elements necessary to the determination of this issue. In its brief, the Board argues that even assuming that the necessary loss of a government right, benefit, or entitlement has been shown in this case,[3] Appellant has failed to demonstrate that the Board's decision to deny his nursing license and place the denial on a national database will foreclose his ability to seek employment elsewhere. According to the Board, its decision to report the denial of Appellant's initial nursing license will not foreclosure his ability to obtain a license in another state because under the Interstate Nurse Licensure Compact, the Board's decision in Tennessee is not binding on other states. *See* Tenn. Comp. R. & Regs. 1000-01-.17(3)(b) ("An individual who had a license which was surrendered, revoked, suspended, or an application denied for cause in a prior state of primary residence, may be issued a

---

[3] We note, however, that neither party cites any law in which the denial of an initial license granted by the State was held to implicate the loss of a government right or benefit sufficient to implicate the applicant's liberty interests. From our review, the cases in which a liberty interest has been implicated all involve the non-renewal of a contract of employment, a license, or the refusal to rehire an employee. *See, e.g.,* ***Codd v. Velger***, 429 U.S. 624, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977) (involving police patrolman dismissed after probationary period); ***Paul v. Davis***, 424 U.S. 693, 701, 96 S. Ct. 1155, 1161, 47 L. Ed. 2d 405 (1976) (holding that reputation alone is insufficient to implicate liberty interest without "more tangible interests such as employment); ***Bd. of Regents of State Colleges v. Roth***, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (involving a university's decision not to rehire a non-tenured professor); ***Baden v. Koch***, 799 F.2d 825 (2d Cir. 1986) (involving a suit brought by a demoted city employee); ***Huntley v. N. Carolina State Bd. of Ed.***, 493 F.2d 1016 (4th Cir. 1974) (involving revocation of permanent teaching license); ***In re Selcraig***, 705 F.2d 789 (5th Cir. 1983) (involving a discharged school official); ***Quinn v. Shirey***, 293 F.3d 315, 318 (6th Cir. 2002) (involving a city employee who alleged that he was forced to resign); ***Ludwig v. Bd. of Trustees of Ferris State Univ.***, 123 F.3d 404 (6th Cir. 1997) (concerning the termination of a non-tenured basketball coach's employment with university); ***Joelson v. United States***, 86 F.3d 1413 (6th Cir. 1996) (involving the refusal to reappoint a bankruptcy trustee); ***Mertik v. Blalock***, 983 F.2d 1353 (6th Cir. 1993) (concerning the city's decision to bar a figure skating coach from the public ice skating rink after serving as the coach at the rink for 25 years); ***Chilingirian v. Boris***, 882 F.2d 200 (6th Cir. 1989) (regarding city attorney's employment terminated by city council); ***Lake Michigan Coll. Fed'n of Teachers v. Lake Michigan Cmty. Coll.***, 518 F.2d 1091 (6th Cir. 1975) (concerning discharged community college professors); ***Blair v. Bd. of Regents of State Univ. & Cmty. Coll. Sys. of Tennessee***, 496 F.2d 322 (6th Cir. 1974) (involving the rehire of a non-tenured teacher); ***Hostrop v. Bd. of Junior Coll. Dist. No. 515, Cook & Will Ctys., & State of Ill.***, 471 F.2d 488 (7th Cir. 1972) (concerning the termination of the employment contract of a college president); ***Buxton v. City of Plant City, Fla.***, 871 F.2d 1037 (11th Cir. 1989) (involving the termination of a police officer's employment); ***Campbell v. Pierce Cty., Ga. By & Through Bd. of Comm'rs of Pierce Cty.***, 741 F.2d 1342 (11th Cir. 1984) (involving the termination of a county employee's employment).

single state license in a new primary state of residence until such time as the individual would be eligible for an unrestricted license by the prior state(s) of adverse action."). As such, although the Board's decision to deny Appellant the ability to practice as a nurse in Tennessee may make him less attractive in other states, the Board asserts that it does not foreclose the possibility that another state may grant Appellant's application for licensure. We tend to agree that although the likelihood of Appellant obtaining a license in another state may be reduced by the denial of his Tennessee license, the possibility of Appellant obtaining a license in another state is not precluded simply because of the Board's decision, which directly affects Appellant's status only in Tennessee. In this case, however, the Board's decision regarding the charge of fraud and deceit certainly impugns Appellant's honesty; as previously discussed, some courts have held that allegations of dishonesty are sufficient to satisfy this element. *See Lake Michigan Coll. Fed'n of Teachers v. Lake Michigan Cmty. Coll.*, 518 F.2d 1091, 1097 (6th Cir. 1975) (holding that "charges of mental illness, fraud, and untruthfulness all have been held to affect the discharged employee's liberty") (citing *Huntley v. Board of Education*, 493 F.2d 1016, 1019 (4th Cir. 1974); *Hostrop v. Board of Junior College Dist. No. 515*, 471 F.2d 488, 494 (7th Cir. 1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973)).

Finally, the Board argues that even if Appellant's liberty interests are implicated in this case, he has received all of the process to which he was entitled: a name-clearing hearing. We agree. As previously discussed, a deprivation of an applicant's liberty occurs not simply where the government has taken some action that is injurious to an employee's or applicant's reputation, but also when the government refuses the employee's or applicant's request for a name-clearing hearing. *See Quinn*, 293 F.3d at 321 (quoting *Ludwig*, 123 F.3d at 410)). Here, after the Board informed Appellant of its preliminary decision to deny his application for a nursing license, it permitted Appellant and his counsel to appear before the Board not once, but on three separate occasions, two of which occurred before the full Board, rather than the ARC. Although the formal procedures applicable to a contested case under the UAPA were undisputedly not followed, these meetings were sufficient to qualify as a name-clearing hearing. *See Chilingirian*, 882 F.2d at206 (noting that the requirements of a name-clearing hearing were met where the plaintiff was given ample opportunity to refute the charges against him, both the plaintiff and his attorney spoke at length, and the plaintiff was not precluded from introducing favorable statements of others to support his claims, despite the fact that he was not allowed to cross-examine board members). Appellant's assertion that he was entitled to the formal procedure of a contested case regarding the denial of his initial nursing license is unavailing. Even assuming *arguendo* that all of the required elements were met as to whether Appellant's liberty interests were implicated by the denial of his license in this particular case, Appellant has not shown that his due process rights were implicated in such a way as to entitle him to a contested case under the UAPA. We therefore pretermit all of the arguments in Appellant's brief that are

predicated on his contentions regarding the decisions that may have been made by an administrative law judge in a contested case hearing.

## II. Writ of Certiorari

Having now determined that the denial of Appellant's initial nursing license was not required to be determined in accordance with the contested case procedure under the UAPA, we next address whether the trial court erred in denying his request for relief pursuant to a writ of certiorari under Tennessee Code Annotated Section 27-8-101. Section 27-8-101 provides, in relevant part:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

The Tennessee Supreme Court described the remedy provided in Section 27-8-101 as follows:

> A common-law writ of certiorari is an extraordinary judicial remedy. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008) (quoting *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001)). The scope of the judicial review available through a common-law writ is quite limited. *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d 359, 363 (Tenn. 2007); *Leonard Plating Co. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006).

*Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 728 (Tenn. 2012); *see also Stewart v. Schofield*, 368 S.W.3d 457, 460 n.3 (Tenn. 2012) ("Tennessee Code Annotated section 27-8-101 codifies the common law writ of certiorari [.]").

"The primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue de novo as the initial decision maker." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005) ("'Judicial review of administrative decisions . . . is limited in scope. The . . . extent of a judicial review . . . is narrow. As a general rule [local government bodies are] clothed with broad discretionary powers[.]'") (quoting 82 Am. Jur. 2d, *Zoning and Planning* § 334 at 906). These decisions, whether legislative or administrative, "are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990).

"Under the limited standard of review in common law [] writ of certiorari proceedings, courts review a lower tribunal's decision only to determine whether that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision." *West*, 246 S.W.3d at 574 (citing *Petition of Gant*, 937 S.W.2d 842, 844–45 (Tenn. 1996)). "In proceedings involving a common law writ of certiorari, illegal, arbitrary, or fraudulent actions include: 1) the failure to follow minimum standards of due process; 2) the misrepresentation or misapplication of a legal standard; 3) basing a decision on ulterior motives; and 4) violating applicable constitutional standards." *Harding Academy v. Metro. Gov't of Nashville & Davidson Co.*, 222 S.W.3d 359, 363 (Tenn. 2007) (citing *Hoover, Inc. v. Metro. Bd. of Zoning Appeals*, 924 S.W.2d 900, 905 (Tenn. Ct. App. 1996)). As we explained in *Moore*:

> Under the certiorari standard, courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision . . . ; (2) reweigh the evidence . . . ; or (3) substitute their judgment for that of the lower tribunal. . . . It bears repeating that [the] common law writ of certiorari is simply not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker.

*Moore*, 246 S.W.3d at 574 (citations omitted) (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Watts v. Civil Serv. Bd. for Colum.*, 606 S.W.2d 274, 277 (Tenn. 1980); *421 Corp. v. Metropolitan Gov't of Nashville*, 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000); *Hoover, Inc. v. Metro Bd. of Zoning App.*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981)). "If 'any possible reason' exists justifying the action, it will be upheld." *McCallen*, 786 S.W.2d at 641. "This limited standard of review applies to both the trial court and to this Court." *Lamar Tenn., LLC v. Murfreesboro Bd. of Zoning Appeals*, 336 S.W.3d 226, 232 (Tenn. Ct. App. 2010) (citing *Wright v. Tenn. Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 8 (Tenn. Ct. App. 2008)).

In this case, the Board found two grounds for denying Appellant's initial license: (1) that Appellant was guilty of a crime; (2) that Appellant was guilty of fraud or deceit. The trial court ruled that the Board's finding that Appellant was guilty of a crime was arbitrary, capricious, or illegal but affirmed the Board's finding that Appellant was guilty of fraud or deceit. Both parties argue that the trial court erred in its decision in the other party's favor. We will consider each ground in turn.

## A.

The Board first argues that the trial court erred in ruling that the Board was not entitled to rely on Appellant's now-expunged misdemeanor conviction from Oklahoma as a ground to deny his nursing license. As previously discussed, a ground for denying a nursing license exists where there is "proof" that the applicant "[i]s guilty of a crime[.]" Tenn. Code Ann. § 63-7-115(a)(1)(B). The regulations promulgated by the Board recognize the seriousness of this ground for the denial of a nursing license:

> The Board of Nursing is concerned about the number of individuals with criminal conviction histories who apply for licensure as registered nurses. The Board's concern stems from the fact that nurses care for clients and families in a variety of settings where there may be no direct supervision. Individuals to whom care is given are often vulnerable, both physically and emotionally. The nurse has access to personal information about the patient and/or his/her family, has access to the client's property and provides intimate care to the client. The Board believes that persons who receive nursing care in Tennessee should be able to have confidence that an individual licensed by the Board does not have a history of mistreatment, neglect, violence, cheating, defrauding the public, or otherwise taking advantage of another person.

Tenn. Comp. R. & Regs. 1000-01-.13(2). Accordingly, the Board will presume that certain serious crimes committed within five years of the application for licensure establish that "an applicant is not entitled to licensure." *Id.* at (2) & (3). (listing the applicable crimes for both adults and juveniles). Finally, the regulations note that "any criminal conviction, whether or not listed in Rule 1000-01-.13(2) above, [is] a violation of T.C.A. 63-7-115(a)(1)(B)." *Id.* at (5). Thus, where "an applicant . . . is convicted of any crime, it is grounds for denial of licensure or disciplinary action by the Board." *Id.*

Here, the Board argues that it was entitled to rely upon Appellant's admission that he had been convicted of a crime in Oklahoma regardless of the conviction's later expunction. According to the Board, the trial court erred in relying on this Court's Opinion in *Miller v. Tennessee Board of Nursing*, 256 S.W.3d 225 (Tenn. Ct. App. 2007), because another decision by the Tennessee Supreme Court calls the language from *Miller* on this issue into question. In *Miller*, a licensed nurse was charged in a disciplinary matter under Tennessee Code Annotated Section 63-7-115(a)(1)(B) and (F) on grounds of: (1) being guilty of a crime; and (2) for engaging in unprofessional conduct. *Id.* at 228. In a contested case hearing, the nurse admitted that she pleaded guilty to resisting arrest and vandalism. *Id.* at 231. The Court of Appeals affirmed both grounds raised in the disciplinary action. On appeal, the nurse argued that the Board was not entitled to rely on her criminal convictions because the convictions were expunged after her successful completion of probation. Specifically, the nurse argued that "these convictions had been expunged and that the effect of the expunction was to clear her record." *Id.*

- 16 -

The Court of Appeals agreed with the nurse's contention regarding the effect of an expunged conviction but ultimately ruled that she failed to present evidence of the expunction:

> [The nurse] is correct with regard to the legal effect of an expungement order; however, she failed to present admissible evidence that the public records of these two convictions [] had been expunged. The effect of expunging the records of a criminal charge is to restore the person to the position he or she occupied prior to the arrest or charge. *State v. Sims*, 746 S.W.2d 191, 199 (Tenn. 1988). Thus, persons whose records have been expunged may properly decline to reveal or acknowledge the existence of a former charge. *Pizzillo v. Pizzillo*, 884 S.W.2d 749, 754 (Tenn. Ct. App. 1994).

*Miller*, 256 S.W.3d at 231. Thus, from our reading of the *Miller* opinion, had the nurse presented evidence of her expunction to the Board, the Board would not have been entitled to rely on her now-expunged convictions to show that she was guilty of a crime under Section 63-7-115(a)(1)(B).

The Board argues, however, that the above language in *Miller* is merely dicta and that it conflicts with the Tennessee Supreme Court's decision in *Canipe v. Memphis City School Board of Education*, 27 S.W.3d 919 (Tenn. 2000). In *Canipe*, a tenured teacher was charged with sexual battery, pleaded guilty, and was granted judicial diversion. Nearly a year after the guilty plea, the school board filed formal charges against the teacher for "conduct unbecoming a member of the teaching profession[.]" *Id.* at 920. Prior to the school board hearing on the misconduct charge, the teacher's conviction was expunged in accordance with statutory provisions. During the school board hearing, however, the teacher admitted that he had pleaded guilty to the crime in an effort to explain the circumstances under which he was charged. The school board sustained the misconduct charge and terminated the teacher's employment. *Id.* at 921. Both the trial court and the Court of Appeals affirmed the finding of misconduct and the termination. The Tennessee Supreme Court agreed that the Board was entitled to consider evidence from the local newspaper and the teacher's own admissions concerning the misconduct charge, regardless of the expunction of the conviction. *Id.* at 922. In support, the Tennessee Supreme Court cited two cases in which it had held that evidence involving criminal acts that had been expunged were admissible prior bad acts to show a defendant's potential for rehabilitation or the likelihood that the defendant will become a repeat offender. *Id.* (citing *State v. Schindler*, 986 S.W.2d 209 (Tenn. 1999); *State v. Lane*, 3 S.W.3d 456, 461–62 (Tenn. 1999)).

We cannot agree, however, that *Canipe* supports the Board's decision in this particular case. First, we note that in *Canipe*, the teacher was not charged with having

been guilty of a crime, but instead with the more broad charge of "conduct unbecoming a member of the teaching profession[.]" *Canipe*, 27 S.W.3d at 920. Accordingly, like the court in *Schindler*, the school board was entitled to consider the teacher's admissions regarding his conduct that were relevant to the charge of misconduct in the disciplinary proceedings. In this case, however, the ground for the denial of Appellant's license is much narrower than the ground for discipline against the teacher in *Canipe*: that Appellant was guilty of a crime. Indeed, the regulations relevant to this issue make clear that it is the *judgment* of conviction that is an essential component of any finding on this charge, as the Board is only entitled to presume that an applicant is not entitled to a license where "the time for appeal has expired" on the "conviction." Tenn. Comp. R. & Regs. 1000-01-.13(2); *see also* Tenn. Comp. R. & Regs. 1000-01-.13(5) (requiring a "criminal conviction"). Thus, it is the legal status of a conviction, rather than any underlying misconduct, that must be proven to satisfy Section 63-7-115(a)(1)(B). In this case, however, there was no material evidence from which the Board could have found that Appellant was guilty of a crime because Appellant's expunged plea of nolo contendere does not constitute a conviction under either Tennessee or Oklahoma law.

A substantially similar argument was raised in *Wright v. Tennessee Peace Officer Standards & Training Commission*, 277 S.W.3d 1, 12 (Tenn. Ct. App. 2008), *perm. app. denied* (Tenn. 2008). In *Wright*, a police officer challenged his decertification and termination on the basis of a domestic assault conviction pursuant to Tennessee Code Annotated Section 38-8-106.[4] The police officer argued that the Tennessee Peace Officer Standards and Training Commission ("the POST Commission") was not entitled to rely on his guilty plea to the charge of domestic assault because the charge had been expunged. The trial court upheld the POST Commission's findings, and the police officer appealed.

The Court first noted that the police officer's guilty plea had been expunged after his successful completion of a judicial diversion program under Tennessee Code Annotated Section 40-35-313. The Court explained that a person "who successfully completes a judicial diversion program under § 40-35-313 has not been 'convicted' of any crime, and cannot be treated as such for 'any . . . purpose' under the law, except those specified by statute, none of which apply here." *Wright*, 277 S.W.3d at 8. Accordingly, this Court "reject[ed] the [POST C]ommission's argument on appeal that [the police officer's] guilty plea should be treated as a 'conviction.'" *Id.* Thus, the *Wright* Court concluded that based upon the statute conferring the expunction right, Section 40-35-313, the expunged "conviction" could not be considered a criminal conviction for purposes of a civil disciplinary proceeding related to the police officer's employment.

---

[4] Section 38-8-106(4) requires that all police officers: "Not have been convicted of or pleaded guilty to or entered a plea of nolo contendere to any felony charge or to any violation of any federal or state laws or city ordinances relating to force, violence, theft, dishonesty, gambling, liquor, controlled substances or controlled substance analogues[.]"

The *Wright* Court did not end its inquiry, however. In *Wright*, the regulations at issue indicated that the POST Commission could consider not only a conviction, but also a guilty plea. *Wright*, 277 S.W.3d at 10. The POST Commission therefore argued that it could consider a plea of guilty to a charge of domestic violence regardless of whether that plea was later expunged, citing, as the Board does in this case, *Canipe*. This Court in *Wright*, however, held that the situation in *Canipe* was distinguishable because "the ground for the teacher's dismissal was 'conduct unbecoming a member of the teaching profession.'" *Id.* at 13 (citing *Canipe*, 27 S.W.3d at 920). As the Court explained:

> That is a criterion which may be implicated by the underlying facts of an alleged crime, as distinguished from the legal proceedings resulting from those underlying facts. As such, the evidence of the teacher's guilty plea was being used not necessarily to prove the existence of the plea itself, as a legally operative fact, but rather as evidence of the teacher's underlying conduct, namely the acts that allegedly constituted sexual battery. In the instant case, by contrast, evidence of Wright's plea was used simply to prove that the plea happened, not to prove the factual scenario that precipitated the arrest, charge, and eventual plea.
>
> The "conduct unbecoming" standard in *Canipe* meant that underlying facts were enough to dismiss the teacher. In the instant case, underlying facts are not enough; a legal status must be proven in order to satisfy the applicable statute. A factual allegation of domestic violence, absent a conviction, guilty plea, or plea of nolo contendere, does not pass muster as an independent reason for denying (or revoking) certification . . . . The POST Commission did not decertify [the police officer] for "conduct unbecoming a police officer". . . . Rather, the [POST] [C]ommission decertified [the police officer] because he "pleaded guilty to . . . [a] violation of . . . state law[ ] . . . relating to force [or] violence[.]" Tenn. Code Ann. § 38-8-106(4). This statutory basis does not allow for disqualification on the basis of underlying facts alone.

*Wright*, 277 S.W.3d at 13–14.

The same is true in this case. Here, the Board found that Appellant's license should be revoked not on the ground that he was unfit or that he had conducted himself unprofessionally, but simply on the basis that he was "guilty of a crime." *See* Tenn. Code Ann. § 63-7-115(a)(1)(B). Like in *Wright*, the simple fact that Appellant may have committed some misconduct that could have been charged as a crime is insufficient to show that he was actually found guilty. Instead, unlike the charge at issue in *Canipe*, in both *Wright* and in this case, it is the legal status of a conviction that is necessary to provide the factual basis for this ground. Because the underlying conviction had been expunged in *Wright*, however, the Court held that although there was evidence that the

- 19 -

officer may have committed domestic violence, the evidence concerning the police officer's guilty plea and conviction for domestic violence were erased through the expunction statute. As such, there was no material evidence from which the POST Commission could conclude that the police officer had either pleaded guilty or been convicted of the crime of domestic violence. *See id.* at 14–15.

We concede that the expunction in this case did not result from an application of the judicial diversion program under Tennessee Code Annotated Section 40-35-313. However, based upon our review of the statutes from which Appellant's conviction was expunged, we agree with the trial court that no conviction exists from which the Board could find that Appellant had been found "convicted" of a crime. Here, the Cleveland County, Oklahoma district court cited two Oklahoma statutes in granting Appellant's expunction: Oklahoma Statute, title 22, sections 18 and 19.

Under Section 18, Appellant was entitled to expunction because he "was convicted of a misdemeanor offense, [] has not been convicted of a felony, [has] no felony or misdemeanor charges [] pending [], and at least ten (10) years have passed since the end of the last misdemeanor sentence[.]" Okla. Stat. Ann. tit. 22, § 18(A)(10). The statute provides, however, that a conviction expunged under this subsection "shall be admissible in any subsequent criminal prosecution to prove the existence of a prior conviction or prior deferred judgment without the necessity of a court order requesting the unsealing of the records." *Id.* § 18(D). Although this case certainly does not constitute a criminal prosecution, the above subsection may call into question whether Appellant's conviction stands for purposes of a subsequent civil proceeding. Section 19, however, makes clear that it does not. Under Section 19, an individual that has obtained expunction of a conviction under Section 18 may go further to request that his or her record be sealed. *See id.* § 19(A) ("Any person qualified under Section 18 of this title may petition the district court of the district in which the arrest information pertaining to the person is located for the sealing of all or any part of the record, except basic identification information."). When such a request is granted, "the subject official actions shall be deemed never to have occurred, and the person in interest and all criminal justice agencies may properly reply, upon any inquiry in the matter, that no such action ever occurred and that no such record exists with respect to such person." *Id.* § 19(D).

In this case, the Cleveland County, Oklahoma district court specifically ruled in its order that any court record pertaining to Appellant's misdemeanor conviction is sealed and that Appellant's conviction "be deemed never to have occurred." Like a conviction expunged under Section 40-35-313, it therefore appears to this Court that where a conviction is expunged and the record of it sealed under Oklahoma Statute, title 22, sections 18 and 19, no conviction exists for purposes of subsequent civil matters. As such, pursuant to Oklahoma law, we conclude that the Board was simply not entitled to rely on an expunged "conviction" in determining that Appellant was guilty of a crime

- 20 -

pursuant to Section 63-7-115(a)(1)(B). *See Miller*, 256 S.W.3d at 231. The trial court therefore did not err in reversing this portion of the Board's decision.

**B.**

Finally, we consider whether the trial court erred in sustaining the Board's finding that Appellant was guilty of fraud or deceit. As previously discussed, Tennessee Code Annotated Section 63-7-115 specifically states that the Board may deny a license where the applicant "[i]s guilty of fraud or deceit in procuring or attempting to procure a license to practice nursing." Tenn. Code Ann. § 63-7-115(a)(1)(A). Appellant asserts that "[t]here is simply no proof of fraud" in the record to sustain the Board's finding on this issue. As we perceive Appellant's argument, he contends that there was no material evidence to support the Board's finding under Section 63-7-115.

As an initial matter, however, we note that despite Appellant's decision to focus almost exclusively on the question of fraud in this case, Section 63-7-115(a)(1)(A) allows the Board to deny an application not only on the basis of fraud, but also on the basis of deceit. Nothing in Section 63-7-115 or the corresponding regulations defines the term "deceit." Generally "deceit" is defined as "the act of giving a false impression[.]" Bryan Garner, *Garner's Dictionary of Legal Usage* 250 (3d ed. 2011); *see also Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 591 (Tenn. Ct. App. 2013) (holding that it "is well settled that in interpreting the meaning of a word or phrase in a rule or statute, the court may use dictionary definitions"). Here, the Board's decision to deny Appellant's license is set out in the ARC's August 6, 2014 letter:

> Your attorney asked for more specificity as to the basis of the fraud or deceit portion of the recommendation. This portion of the recommendation is based in part upon your statement to staff during the application process that you could not obtain a copy of the warrant from your Oklahoma arrest to provide to the Board. It is also based upon your statements in your letter and in person at your meeting with the committee. Among other things, the committee did not believe your statement that the 13-year-old girl you were alleged to have molested and the other 13-year-old girl who witnessed the alleged molestation were "actually out in the neighborhood sexually assaulting the adult male neighbors." The Committee also did not believe your statements about being extorted for $125,000 by a woman who claimed incorrectly believed you moved to Nashville because you "had made it big as a country singer." Similarly, the committee did not believe that you were extorted into having sex with another woman for almost a year. You stated "[t]he person I thought was my friend was now extorting sex from me for payment for her tape recording her daughter. She kept reminding me that if it wasn't for her I would be going to prison right before she demanded we have sex, which we never did before this

happened).” Later in the letter you wrote the “woman extorted sex from me for almost a year.”

Thus, the Board, relying largely on the letter submitted by Appellant in furtherance of his application, apparently found that Appellant was deceitful in his statements to the Board concerning not only the documents regarding his criminal conviction in Oklahoma but also his explanation of the charges to the Board.

From our review of the record, we cannot conclude that the Board lacked material evidence to find that Appellant was guilty of deceit in his attempts to procure his license. Here, in response to a request from the Board regarding his misdemeanor conviction in Oklahoma, Appellant submitted a pro se letter to the Board offering “an explanation of how this transpired.” As we perceive it, Appellant argues that the Board should not have considered this letter arguing: “If the convictions did not legally exist then the unfortunate letter of [Appellant] would not have been before the Board, because [Appellant] would have been under no duty to explain a non-existent crime.” We respectfully disagree that the later expunction of Appellant’s conviction deprives the Board of the ability to consider Appellant’s letter.[5]

First, regardless of the subsequent expunction of Appellant’s conviction, at the time that he submitted his application, Appellant stood convicted of a crime. There can be no question, therefore, that at the time of his application, he was required to respond in the affirmative to any questions concerning his existing conviction. Neither this Court nor the Board was required to ignore Appellant’s letter simply because Appellant was able to obtain an expunction of the underlying offense approximately one year after he submitted his application for licensure. Furthermore, while the Board was not entitled to consider Appellant’s expunged conviction as evidence of his legal status as having been convicted of a crime, like the school board in *Canipe*, the Board was entitled to consider admissions by Appellant and other extrinsic evidence regarding the underlying factual scenario relevant to the issue of whether Appellant was guilty of fraud or deceit in the procurement of his license. *See Canipe*, 27 S.W.3d at 920. The Board was also well within its discretion to consider the veracity of Appellant’s story and the story’s effect on Appellant’s credibility. *See Estate of St. v. State Bd. of Equalization*, 812 S.W.2d 583, 587 (Tenn. Ct. App. 1990) (“It is the agency’s role to examine the credibility [and] demeanor, of the [] witness, and the agency is afforded wide discretion in deciding the appropriate amount of weight and merit which should be afforded to each.”). As such,

---

[5] Indeed, from our review of the administrative record, at no time did Appellant object to the Board’s consideration of his letter. *See Bobo v. State Real Estate Comm’n*, No. M2013-02037-COA-R3-CV, 2014 WL 1852604, at *17 (Tenn. Ct. App. May 5, 2014) (holding, in an appeal from an administrative decision, that a party claiming that the agency erred in considering certain evidence waived the argument by failing to make a contemporaneous objection). Instead, Appellant and his counsel merely requested that he be allowed to withdraw his application. Appellant has not raised as an issue in this appeal the Board’s denial of his request to withdraw his application.

any argument that the Board was not entitled to consider Appellant's letter is, respectfully, unavailing.

In our view, Appellant's letter provided material evidence from which the Board could conclude that Appellant was guilty of fraud or deceit in the procurement of his license. In this letter, Appellant detailed the extraordinary events that he asserted led to his nolo contendere plea of outraging public decency in 1994. Among other things, the letter included two extortion plots, attempted assault, allegedly false sexual allegations, expensive private investigations, and a years-long legal proceeding.

As previously discussed, the Board specifically noted that it "did not believe" Appellant's allegations regarding his criminal conviction and therefore found him guilty of deceit in the pursuit of his license. This Court has previously held that where credibility plays a pivotal role in an agency's decision, the credibility determinations of the person or entity hearing the evidence is entitled to substantial deference. *See McEwen v. Tennessee Dep't of Safety*, 173 S.W.3d 815, 824 (Tenn. Ct. App. 2005). Regardless of the resolution of the charges against Appellant or his ability or inability to obtain court documents from Oklahoma, the decision of the Board that Appellant's story was deceitful is not subject to reversal under the limited common law writ of certiorari standard. Neither this Court nor the Board is "'required to check common sense at the courthouse door.'" *Sparkman v. Phillips*, No. M2013-01235-COA-R3-CV, 2014 WL 3058443, at *6 (Tenn. Ct. App. July 7, 2014) (quoting *Dattel Family Ltd. P'ship v. Wintz*, 250 S.W.3d 883, 892 (Tenn. Ct. App. 2007)). Here, the Board chose not to credit Appellant's allegation that the criminal charges against him resulted not from any misconduct on his part whatsoever, but instead from a year-long vendetta initiated by a relative stranger who attempted to: (1) assault Appellant immediately upon meeting him; and (2) extort a significant sum of money from Appellant simply because she believed that he was a country music singer. In our view, the Board's decision on this issue is neither arbitrary, capricious, illegal, nor unsupported by material evidence in the record. This Court does not discount that false allegations can often lead to wrongful convictions. In this case, however, even Appellant admits in his brief that his story "may seem improbable in many respects" and that "[i]t would be disingenuous to argue to the contrary." Clearly, Appellant chose to tell this tale in order to explain his misdemeanor conviction in Oklahoma: Appellant's letter characterizes his conviction as the result of his victimization by a series of "psychotic women," thereby shifting all of the blame to others for his own conviction. Further, other than his own unsubstantiated statements, Appellant offered no evidence to support his account of the circumstances surrounding his conviction, such as reports from the multiple private investigations that were allegedly instituted on his behalf. Indeed, Appellant's counsel insisted that he would obtain such evidence by the Board's April 2014 meeting; when the Board finally made its decision after hearing from Appellant and his counsel in December 2014, however, Appellant offered no such evidence. Given the Board's credibility finding against

Appellant, we cannot conclude that the Board lacked material evidence that Appellant engaged in deceit in an effort to procure his nursing license.

## Conclusion

The decision of the Davidson County Chancery Court is affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Jack Wayne Butler, and his surety, and one-half to Appellee Tennessee Board of Nursing, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE